JS3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff/Respondent,<br><br>    v.<br><br>LAUREANO BARRAGAN SANTANA,<br><br>    Defendant/Petitioner. | SA CV 09-1078 AHS<br>SA CR 04-251 AHS<br><br>ORDER DENYING:<br>(1) PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255, AND (2) REQUEST FOR EVIDENTIARY HEARING |

**I.**

**PROCEDURAL BACKGROUND**

On April 22, 2005, defendant Laureano Barragan Santana ("Petitioner") entered guilty pleas to conspiracy to possess with the intent to distribute 1,800 grams of methamphetamine, in violation of 21 U.S.C. § 846, and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a). On August 1, 2005, Petitioner was sentenced to 120 months imprisonment, to be followed by five years of supervised release.

Petitioner timely appealed his sentence on various grounds, including the district court's: (1) failure to comply

with Fed R. Crim. P. 32(i)(3)(B), (2) denial of minor role adjustment and downward departure based on alien status; and (3) imposition of an unreasonable sentence.  Petitioner also challenged certain terms of supervised release.  In a mandate issued on May 26, 2008, the U.S. Court of Appeals for the Ninth Circuit declined to disturb petitioner's sentence and affirmed the judgment in full.  On October 8, 2008, Petitioner's petition for writ of certiorari was denied by the U.S. Supreme Court.

On September 18, 2009, Petitioner filed *pro se* a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("2255 motion").  On March 2, 2009, the government filed opposition to Petitioner's 2255 motion.  On March 29, 2010, Petitioner filed a reply.

By this Order, the Court denies Petitioner's 2255 motion and request for evidentiary hearing.

**II.**

**SUMMARY OF PARTIES' CONTENTIONS**

**A.     Petitioner's Claims**

Petitioner seeks relief under § 2255 and requests an evidentiary hearing in support of two claims of ineffective assistance of counsel.  In his first ineffective assistance claim, Petitioner alleges that counsel forced him to enter a guilty plea "that led to a sentence that was twice the sentence promised by his counsel."  (Motion at 6.)  Petitioner acknowledges that counsel told him the government offered 10 years in exchange for the guilty plea, and that counsel warned him that if he did not take the plea offer, he would face a sentence of 25 years to life, with a lower sentence of 20 years being "very hard" to get.  (Motion at 9.)

1          Petitioner alleges that counsel told him the 10 year term
2   in the plea agreement was a "mere formality" because counsel "was
3   going to get him a sentence between 48 to 54 months." (Motion at
4   9-10.)  Based on counsel's "offer" of a 48-54 month sentence,
5   compared with the possibility of at least 20 years in prison,
6   Petitioner accepted the plea deal.  (Motion at 10.)
7          Petitioner claims that but for counsel's erroneous
8   promise of a shorter sentence and failure to explain that he would
9   in fact be sentenced to at least 10 years under the plea agreement,
10  he would not have plead guilty.  Petitioner points out that when
11  the Court advised him of the 10 year statutory minimum, Petitioner
12  responded, "If that's the case, I will not plead guilty." (Id.)
13  However, after conferring with counsel and allegedly being
14  reassured he would get 4-4.5 years, Petitioner again confirmed his
15  desire to plead guilty.  (Id.)
16         Petitioner argues that although he stated that his plea
17  was free and voluntary and that no promises had been made to him
18  regarding sentence length, it was his counsel who told him what to
19  say and it is "customary" in these proceedings that defendants do
20  not understand what is going on.  (Motion at 11.)
21         In his second ineffective assistance of counsel claim,
22  Petitioner alleges that counsel "abandoned the Motion to Suppress
23  that could have helped [Petitioner] suppress all statements
24  elicited from federal agents after his arrest," which were used to
25  secure his conviction.  (Motion at 6.)  After Petitioner was taken
26  into custody and invoked his right to counsel, government agent
27  Manna interrogated Petitioner and discovered incriminating facts
28  and information regarding evidence in Petitioner's apartment.

(Motion at 14.)  Petitioner alleges that until co-defendant Sosa pled guilty, the government could rely only on the illegally obtained statements.  (Motion at 16.)  Petitioner argues that if counsel would have insisted that the Court rule on the suppression motion, Petitioner could have intelligently decided whether to try his case with the expectation that the government could use only Sosa's testimony, not the post-arrest statements, during trial. (Id.)  Petitioner contends that counsel's decision to forego the suppression motion, as a result of the guilty plea, "was not a tactical decision or the fruit of a reasoned legal strategy." (Motion at 17.)

**B.      Government's Opposition**

The government opposes Petitioner's 2255 motion, arguing first that Petitioner's claims are barred due to procedural default because Petitioner failed to raise the claims in either the district court or on direct review, and he cannot show just cause for the default or resulting actual prejudice.  The government points out that Petitioner could have alerted (and had a duty to alert) the Court of counsel's purported sentence promise at his change of plea hearing.  (Opp. at 11.)  Petitioner also could have alerted the Court during his sentencing hearing.  (Id.)

The government argues that, even if the Court considers the merits of Petitioner's claims, they must be denied because counsel's performance was not deficient and it in no way prejudiced Petitioner.  Petitioner has not shown a complete miscarriage of justice to justify setting aside his guilty plea.

With respect to Petitioner's first ineffective assistance of counsel claim, the government points out that Petitioner's

purported reliance on counsel's promise of a 48-54 month sentence is contradicted by Petitioner's sworn testimony before the Court. Petitioner told the Court that no one "promised [him] the actual sentence he will receive." (Opp. at 14.) Even if defense counsel made predictions or estimates of what sentence Petitioner would receive, this does not constitute ineffective assistance.

Regarding the second ineffective assistance claim, the government argues that the claim is further barred because Petitioner knowingly and voluntarily waived the right to pursue the suppression motion when he pled guilty. Paragraph 14 of the plea agreement expressly stated that Petitioner was waiving his right to any Fourth and Fifth Amendment challenges, as well as the right to pursue his pending motion to suppress. (Opp. at 19.) The waiver is expressly made again in paragraph 20. (Id.)

The second ineffective assistance claim also fails because counsel was not deficient in advising Petitioner to plead guilty, thereby mooting the motion to suppress. There was significant evidence against Petitioner that was not subject to the motion to suppress and trial was fast approaching. (Opp. at 21-22.) Petitioner can show no prejudice by counsel's actions.

**C.    Petitioner's Reply**

Petitioner disputes that he is subject to procedural default because ineffective assistance is "cause" for failure to raise a challenge before collateral review. (Reply at 2.) Petitioner contends that his plea does not waive relief for deprivation of rights affecting the plea's validity. Petitioner further alleges that counsel did not prepare him for the change of plea hearing, he did not understand that he was abandoning

important legal rights, and "his will was overcome by the promise of his attorney." (Reply at 4.) This deprived Petitioner of "an opportunity to freely express to the Court that a promise had been made and that he was expecting a 48-54 month sentence." (Reply at 4-5.)

Petitioner also argues for the first time on reply that the entire plea agreement should be voided based on a discrepancy in the discussion of total offense level between 23 and 33. (Reply at 11-12.) Alternatively, the Court should re-sentence Petitioner at an offense level of 23.

## III.

## DISCUSSION

### A.    Legal Standard

As a general rule, "§ 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of detention." Lorentsen v. Hood, 223 F.3d 950, 953 (9th Cir. 2000). Section 2255 allows a federal prisoner claiming that his sentence was imposed "in violation of the Constitution or laws of the United States" to "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

Claims that have not previously been raised are generally procedurally barred and cannot be raised for the first time in a 2255 motion. United States v. Frady, 456 U.S. 156, 167, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). However, claims for ineffective assistance of counsel are not subject to procedural default. Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under §

2255, whether or not the petitioner could have raised the claim on direct appeal").

**B.      Procedural Default**

Petitioner's 2255 motion is comprised of two ineffective assistance of counsel claims. Because ineffective assistance of counsel claims are not subject to procedural default under Massaro, Petitioner's claims are not barred. Massaro, 538 U.S. at 504.

**C.      Ineffective Assistance of Counsel**

A defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's actions were outside the wide range of professionally competent assistance, and (2) defendant was prejudiced by reason of counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Perez v. Rosario, 449 F.3d 954, 957 (9th Cir. 2006). The reasonableness of the performance is measured from counsel's perspective at the time it was rendered so as to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The Court's "[r]eview . . . is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1987). A finding of prejudice requires that petitioner show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The same two-part test applies to ineffective assistance claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In this

context, the prejudice in the second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59. In other words, defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. The prejudice inquiry closely resembles the analysis undertaken in ineffective assistance challenges to convictions. Id.

### 1. "Promise" of Sentence

Petitioner argues that he was "forced" into pleading guilty based on counsel's assurances that (1) the ten year offer in the plea agreement was a "mere formality"; (2) Petitioner would receive a 48 to 54 month sentence if he pled guilty; and, (3) if Petitioner went to trial, he would face 25 years to life. (Motion at 6, 9.) Petitioner maintains that had he known he would receive a 120 month sentence as a result of pleading guilty, rather than the shorter 48 to 54 month sentence promised by counsel, he would have insisted on going to trial. In support of this allegation, Petitioner cites a statement made to the Court during his plea colloquy. When the Court advised him of the 10-year statutory minimum, he initially replied "If that's the case, I will not plead guilty." (Reply at 9; Opp., Ex. C, Rep. Tr. Change of Plea Hearing, Apr. 22, 2005 at 41:9-14 (*hereinafter* "COP").) In sum, Petitioner believes that counsel's "fail[ure] to secure the sentence promised to [Petitioner]", combined with the gross mischaracterization of the likely outcome if the case was taken to trial, constitute deficient performance. (Motion at 8-9, 13.)

The Court considers the reasonableness of counsel's

actions as "determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. The record belies Petitioner's assertions that he was forced to plead guilty, did not understand what was going on at the change of plea hearing, and was promised a sentence of 48 to 54 months. Although Petitioner claims that his responses were forced at the direction of counsel, the Court does not find support for this claim. Petitioner's responses do not suggest he was merely a puppet for counsel's directed responses. This is illustrated by the fact that instead of providing an instant "yes" or "no" response to each question, which is what Petitioner claims counsel instructed him to do, when Petitioner did not understand a question translated to him in Spanish, he stopped and asked for clarification.[1] (See, e.g., COP 41:3-8, 42:7-22, 56:3-21, 57:18-25, 64:7-9.) Moreover, when the Court advised Petitioner that it could not accept a guilty plea from someone who is forced or threatened into making a guilty plea, Petitioner confirmed that his plea was free and voluntary. (COP 43:16-21, 45:17-24.) Petitioner even asked for clarification regarding the Court's question on whether anyone had promised him a particular sentence; tellingly, after receiving clarification, Petitioner confirmed that no one had

---

[1] For example, when Petitioner was asked whether he understood the charges against him, he said, "Well, I do understand them, but there are certain things I do not agree with." (COP at 40:11-14.) He went on to explain a factual distinctions about his relationship with coconspirator Zazueta that he wanted corrected for the record. (COP 53:13-19, 54:1-7.) When asked if he understood the special assessment, he asked the Court for clarification and confirmed that he now understood. (COP 42:7-22.)

promised him an actual sentence. (COP 57:18-25.)

The Court cannot credit the allegation that Petitioner was promised a 48 to 54 month sentence. When asked if he understood the mandatory minimum, instead of saying that he was told he would receive a 48 to 54 month sentence, Petitioner responded, "[W]hat was explained to me was that if I plead [sic] guilty, I cannot get any more than 10 years." (COP at 41:3-8.) This contradicts Petitioner's current claim.

Next, the Court explained to Petitioner that he "may certainly be facing the mandatory minimum penalty of 10 years," and he confirmed that he understood. (COP 42:2-6, 50:15-24.) The Court later advised Petitioner that "now is the time to tell [the Court]" if there is any "reason to claim that your guilty pleas are not made freely" or if there is any reason why the pleas should not be taken. (COP 61:16-22.) Petitioner gave no reason. Petitioner confirmed under oath that all of his responses were truthful. (COP 49:6-9, 61:12-15.)

At the conclusion of the change of plea hearing, the Court observed that "Mr. Santana has proceeded cautiously and carefully today, because he wants to make sure that he does understand these proceedings, and I think that he does." (COP 65:10-12.) Having observed Petitioner, the Court found that the guilty pleas were made freely and voluntarily. (COP 65-66.)

Nothing in Petitioner's 2255 motion alters the Court's earlier finding that he understood the consequences of pleading guilty and the pleas were given freely and voluntarily. There is no evidence to suggest that counsel promised Petitioner a particular sentence or exaggerated the potential sentence if

10

Petitioner was convicted at trial.[2] This is not a case where counsel made serious errors regarding the applicable law or made unsupported predictions regarding a possible sentence. See Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir. 1986) (finding deficient performance where counsel erroneously advised defendant that he was subject to minimum sentencing law, that there was almost no chance of his receiving an extended or life sentence, and that he had a chance to receive probation if he pled guilty). To the contrary, in the face of mounting evidence against Petitioner, including codefendant Sosa's recent cooperation with the government[3], counsel's advice to plead guilty to an agreed upon term of 10 years instead of going to trial to face a penalty of 20 years or more was sound advice and well within the objective standard of reasonableness. The actual sentence imposed further supports counsel's advice to plead guilty because while the Court did not apply the "safety valve" deduction, it did depart downward from the Sentencing Guidelines and sentenced Petitioner in line with the plea agreement.

Although a finding that Petitioner has not shown deficient performance is sufficient to end the ineffective assistance analysis, the Court nonetheless reviews the prejudice

---

[2] Even if counsel made predictions or estimates of what Petitioner's likely sentence would be, this does not constitute deficient performance. McMann v. Richardson, 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (a mere inaccurate prediction does not constitute ineffective assistance).

[3] Petitioner admits that counsel based his advice on the fact that codefendant Sosa was assisting the government and could testify against him. (Motion at 6.)

11

prong.  Petitioner does not, in fact, demonstrate prejudice. Petitioner contends that he was prejudiced because (1) counsel did not explain what defenses could be argued at trial or the chances of losing/winning at trial (Motion at 6; Reply at 7); (2) he would have taken the case to trial because his post-arrest statements could have been excluded from evidence due to a violation of his Miranda rights (Motion at 11-12); and, (3) he did not receive the promised 48 to 54 month sentence (Motion at 12).

First, Petitioner fails to show either a factual or legal basis in support of his argument that he could have raised any defenses at trial or that he might have obtained a more favorable outcome at trial.

Second, even assuming that Petitioner's post-arrest statements were ruled inadmissible, the remaining evidence against Petitioner was overwhelming.  Significantly, co-defendant Sosa pled guilty a few days before trial and was cooperating with the government.  Notwithstanding Sosa's anticipated testimony against Petitioner, minutes before the drug transaction, Petitioner was observed on the scene delivering the shopping bag containing the drugs to co-defendant Zazueta.  Telephone records also revealed that Petitioner was in contact with co-defendant Sosa shortly before the drug deal.  Given the likely outcome of a guilty verdict based on the foregoing evidence, the Court finds it unlikely that a ruling on the motion to suppress would have changed Petitioner's decision to enter a guilty plea.  Petitioner was not prejudiced.

Third, Petitioner was not prejudiced by any predictions made by counsel because the plea agreement specifically stated that "No one . . . can make a binding prediction or promise regarding

the sentence" and the Court clearly informed him of the relevant mandatory minimum and maximum sentences at his change of plea hearing. (Opp. Ex. B at 13:21-24; COP 41:3-25, 42:1-6, 43:5-9 See Womack v. Del Papa, 497 F.3d 998, 1003 (9th Cir. 2007) (defendant was not prejudiced by counsel's prediction because the plea agreement and the court alerted defendant to the potential consequences of his guilty plea).

Although Petitioner contends that he pled guilty based on lack of understanding regarding the possibility of a longer sentence, even if the range of sentence possibilities could have been made more clear to Petitioner, it appears unlikely that Petitioner would have chosen to proceed to trial in light of the forceful evidence against him, coupled with the possibility of a longer sentence upon conviction. Because Petitioner does not show that he would have insisted on going to trial, he cannot show prejudice.

Even if Petitioner had insisted on going to trial, there is no showing he would have been acquitted, or, if convicted, would have received a lesser sentence. See Hill, 474 U.S. at 59-60 (no prejudice in cases where, assuming defendant had not taken advice to plead guilty, the likelihood remains low that the trial and/or sentencing outcome would have changed).

**2.  Suppression Motion**

Petitioner alleges that "counsel's failure to obtain a decision from the court on his Motion to Suppress was ineffective assistance . . . .". (Motion at 17.) Petitioner alleges that he was prejudiced because the motion to suppress would have revealed that his Miranda rights were violated at the time of his arrest.

(Motion at 11.)

At the change of plea hearing, counsel recognized that Petitioner's guilty pleas rendered moot the motion to suppress. (COP 66:13-21.) The Court deemed the motion withdrawn on defendant's behalf. (Id.) Because counsel's advice to plead guilty was not ineffective, it follows that counsel's decision to withdraw the mooted motion was objectively reasonable. Indeed, Counsel could not have asked the Court to rule on the motion because it would have been in breach of the plea agreement. (Opp. Ex. B at ¶ 14.) ("By pleading guilty, defendant also gives up any and all rights to pursue any . . . pretrial motions that have been filed or could be filed.")

Moreover, Petitioner was not prejudiced by counsel's withdrawal of the suppression motion. As discussed above, even assuming that the Court ruled in Petitioner's favor and excluded the post-arrest statements, the remaining evidence against Petitioner was significant, making it unlikely that Petitioner would have insisted on going to trial. Therefore, counsel's request to withdraw the suppression motion did not prejudice Petitioner.

**D.      Evidentiary Hearing**

   **1.   Legal Standard**

A district court may deny a § 2255 motion without holding an evidentiary hearing when the record clearly establishes that the petitioner is not entitled to relief or when the motion presents "no more than allegations unsupported by the facts or refuted by the record." United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986) (noting that where the plea agreement was clear on its face,

14

no hearing is required and affirming denial of petition). "In addition, judges may use their own notes and recollections of the plea hearing and sentencing process to supplement the record." Shah v. United States, 878 F.2d 1156, 1159 (9th Cir. 1989). Where a petitioner's allegations are "vague and conclusory," the Court need not grant an evidentiary hearing. Id. at 1161. Typically, evidentiary hearings are unnecessary where the allegations are incredible in light of the record, or, when the record already establishes a fact conclusively. See, e.g., Davis v. Woodford, 384 F.3d 628, 644, 646-47 (9th Cir. 2004) (in a § 2254 case, holding that a district court did not err in denying an evidentiary hearing to establish petitioner's incompetence during trial when nothing in the record supported actual incompetence and petitioner's proffered evidence was also unlikely to establish incompetence).

**2.   Analysis**

The record in this case clearly establishes that Petitioner is not entitled to relief. As discussed above, Petitioner's allegations are refuted by the record. See Quan, 789 F.2d at 715. Because no questions of fact remain regarding whether Petitioner's counsel's performance was objectively unreasonable or that Petitioner was prejudiced as a result, no evidentiary hearing is warranted. See Hill, 474 U.S. at 60 (affirming district court's denial of evidentiary hearing where petitioner failed to allege the kind of prejudice necessary to satisfy Strickland).

//
//
//

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court denies Petitioner's 2255 motion to vacate, set aside, or correct sentence.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on the government and on Petitioner at his last-known place of incarceration.

DATED: June 25, 2010.

*ALICEMARIE H. STOTLER*
ALICEMARIE H. STOTLER
U.S. DISTRICT JUDGE